Dustin **BEQUETTE**, Respondent,

v.

Patricia **BUFF**, Appellant.

No. 61896.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 7, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 19, 1993.

Eugene K. Buckley, St. Louis, for appellant.

James E. Godfrey, James E. Godfrey, Jr., St. Louis, for respondent.

CRAHAN, Judge.

Patricia Buff ("Defendant") appeals from an adverse judgment of $25,000 entered pursuant to a jury verdict in a suit seeking to recover for personal injuries sustained by Dustin Bequette ("Plaintiff") in an altercation following a party at Defendant's home. On appeal, Defendant asserts that the trial court erred in refusing her motion for a directed verdict and alleges error in the instructions and in certain evidentiary rulings. We find Defendant's first point to be dispositive and reverse the judgment.

Upon review of a denial of a directed verdict, we review the evidence presented at trial to determine whether or not the Plaintiff introduced substantial evidence that tends to prove the facts essential to plaintiff's recovery. *Aubuchon v. Hyland*, 820 S.W.2d 613, 615 (Mo.App.1991). If the plaintiff has introduced substantial evidence, we will not find that the trial court committed reversible error. *Id.* In reaching this determination, we review the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences, and disregarding the defendant's evidence except as it aids the plaintiff's case. *Id.* In this particular case, the evidence was essentially undisputed and the issue presented is whether the evidence was sufficient to establish any duty upon the part of Defendant to protect Plaintiff from injuries suffered in an altercation after a party given at Defendant's home.

The record establishes that Defendant planned a party at her home in St. Louis for her son, John, to celebrate his sixteenth birthday. It was to be a dance party for boys and girls from 7:00 p.m. until midnight. The furniture in the living and dining rooms was moved to provide room for dancing to tapes and records. Defendant told John that there could be no more than twenty people at the party, including him and his girlfriend. John gave Defendant a list of names of persons he intended to invite to the party, which did not include Plaintiff. This was the first time Defendant had given a party for John.

In preparation for the party, Defendant purchased soda, chips and a sheet cake. She did not purchase any beer for the party or authorize anyone else to do so. The subject of beer never arose and, if it had, she would not have permitted it.

When the party was planned, Defendant intended to be there. At that time, her work schedule would have permitted her to be home no later than 4:00 p.m. However, after the party had been planned, a coworker on the evening shift underwent emergency surgery and Defendant was required to work the 3:00 p.m. to 11:30 p.m. evening shift in her place. When she learned of the change in schedule, Defendant arranged to have her twenty-six year old son, James, and his wife attend the party. Defendant told James, "Don't let the kids destroy the house."

On the day before the party, Plaintiff, a seventeen year old senior at DuBourg High School, was standing by his locker when a younger student, whom he did not know, came down the hall handing out flyers adver-

tising a "Keg Party—All–U–Can–Drink $3.00" at Defendant's address on the following day. Plaintiff had never been to Defendant's home and was not a friend or schoolmate of John's, but had played soccer against him and knew him by sight. John attended a different school and was not the person who handed out the flyers.

Defendant did not prepare the flyer, did not see it prior to the party, and was not told by anyone prior to the party that flyers were going to be distributed with reference to the party. When shown the flyer at trial, Defendant testified that the printing on the flyer was not John's. Defendant was not aware that anyone planned to charge admission to the party.

After seeing the flyer, Plaintiff talked to his friend, Jim, and they decided to go to the party. Plaintiff also called a twenty-four year old friend, Jeff, and a sixteen year old friend, Joe, neither of whom knew Defendant or John. They said they would like to go to the party also. Plaintiff decided to go to the party because someone he did not know handed him a flyer. He did not talk with Defendant or John and neither invited him to their home.

On March 25, 1988, the day of the party, Defendant left home to go to work at about 2:30 p.m. She arranged the soda, snacks and cake before leaving. John and his girlfriend were home when she left but her older son and his wife were not there yet.

On the evening of the party, Plaintiff, Jim, Jeff, Joe and Joe's girlfriend, Sherry, met in the parking lot of a steakhouse at about 7:30 p.m. and drank a couple of beers in the fifteen or twenty minutes they were there. They then set out for Defendant's home. At about 8:00 p.m., Plaintiff and his friends arrived at the street where Defendant lived and noticed numerous cars parked along the street and people walking up to Defendant's home. As they walked up to the house, Plaintiff and his friends observed that there was a lot of yelling and loud talking inside the house.

As Plaintiff approached Defendant's front porch, there were two men situated outside the front door collecting money. One of the men had long blond hair and no shirt and was sitting on a barstool. He had a club or stick hanging out of his back pocket and was directing people where to park and collecting money. He was never identified at trial but was not Defendant's son John. The other man had long black hair and a moustache and likewise was never identified at trial.

Plaintiff and his friends each paid $3.00 to the shirtless man and entered the house, which was crowded. There were twenty-five to thirty people in the living room area, where a keg of beer had been placed in a metal tub in the corner. Plaintiff saw John in the living room when he first arrived but did not see him thereafter.

Five or ten minutes after Plaintiff entered the house, the police arrived, broke up the party and ordered everyone to leave. As Plaintiff and his friends were leaving, the shirtless man who had collected their money told them to come back later to get their money back or drink. Plaintiff and his friends left and went to Jeff's house.

About a half hour to an hour later, Plaintiff and his friends returned to Defendant's house to get their money back.[1] The door was closed and there were fewer cars parked on the street. Plaintiff, Jeff, and Joe went to the front door and knocked. The shirtless man answered and Plaintiff told him that he and his friends wanted their money back. The shirtless man told them to wait and shut the door. Shortly thereafter, the door opened and there were five or six individuals standing at the door, who told Plaintiff and his companions they were not going to get their money back. An argument ensued and someone Plaintiff did not know thrust a BB handgun toward Plaintiff.[2] Plaintiff reached to grab the gun and, in the scuffle, Plaintiff was pushed down the steps.

1. Apparently, Plaintiff and his friends were unable to locate plastic cups in the short time they were at the party and had not obtained any beer.

2. The person with the BB gun was not John. Plaintiff did not see John until after he was injured. Defendant testified that there were no guns kept in her home.

As a result of the fall, Plaintiff broke his right ankle. As Plaintiff's friends helped him back to their car, a group came out of the house and threw things at the vehicle. John was identified as part of this group. Plaintiff did not report the incident to the police. After the incident, he and his companions drove to a roller rink.

Defendant did not receive any telephone calls at work about any problems with the party. She arranged to get off work a little early and arrived home about 11:15 p.m. There were no guests remaining at her home. Only John and his girlfriend and James and his wife remained and they were cleaning up. Defendant asked why the party had broken up and was told it had become too crowded.

Plaintiff filed a petition stating separate counts against Defendant and Defendant's insurance carrier. The latter count was severed for separate trial. In the first count, Plaintiff alleged that Defendant was negligent in various respects and the case was ultimately submitted to the jury on a theory of "negligent supervision."[3] Defendant's timely motion for a directed verdict was overruled and the jury returned a verdict in favor of Plaintiff in the amount of $25,000.00. Judgment in this amount was entered by the court together with its express finding that there was no just reason for delay as required to permit an appeal. *See* Rule 74.-01(b). This appeal followed.

Defendant maintains that the trial court erred in denying her motion for a directed verdict because the evidence failed to establish any relationship between Defendant and Plaintiff which would give rise to any duty to protect him from the injury suffered. In fact, Defendant points out that she had no reason to know of Plaintiff's existence, let alone his presence on her property or his exposure to potential injury. In this regard, Defendant emphasizes the undisputed evidence that: 1) Defendant planned the party in advance with her son; 2) Defendant limited the number of guests to twenty and Plaintiff was not among the twenty invited guests; 3) Defendant did not issue the flyer or know about it prior to the date of the party; 4) Defendant provided soda, chips and cake; and 5) Defendant did not authorize or know about the serving of alcohol at the party. Under such circumstances, Defendant urges that the evidence was insufficient to establish any duty on her part to protect Plaintiff from injury or, for that matter, that any breach of duty occurred. We agree.

■ At trial and on appeal, Plaintiff somewhat confusingly attempts to justify submission on the ground that Missouri has recognized a tort of "negligent supervision" and that the evidence in this case establishes that Plaintiff failed to properly supervise *the party*. However, Plaintiff overlooks the fact that, to the extent Missouri cases recognize a cause of action for "negligent supervision,"[4] the duty to supervise runs not to an activity, but rather to an individual. The cases relied upon by Plaintiff to support his theory of negligent supervision uniformly involve situations where the plaintiff and the defendant have some relationship. *See Rogger v. Voyles*, 797 S.W.2d 844 (Mo.App.1990) (grandfather had a duty to exercise reasonable or ordinary care to his granddaughter while she was in his charge); *Smith v. Archbishop of St. Louis*, 632 S.W.2d 516 (Mo.App.

---

**3.** Plaintiff's verdict director provided:

> INSTRUCTION NO. 7
>
> Your verdict must be for Plaintiff if you believe:
>
> First, there was a party at the home of Defendant Patricia Buff on March 25, 1988 to which the plaintiff was invited, and
>
> Second, Defendant Patricia Buff failed to adequately supervise the party, and
>
> Third, Defendant Patricia Buff knew, or by the use of ordinary care should have known that without adequate supervision, the party was not reasonably safe, and
>
> Fourth, Defendant Patricia Buff was thereby negligent, and

> Fifth, such negligence directly caused or directly contributed to cause damage to Plaintiff.

In view of our disposition of the case, we need not and do not address Defendant's numerous challenges to this instruction, many of which appear to be well taken. We therefore caution that nothing in this opinion should be read as approval of such instruction.

**4.** On these facts, we need not reach or decide whether the cases relied upon by Plaintiff establish an independent tort of "negligent supervision" as contrasted with simple negligence.

1982) (teacher owed student a duty to exercise reasonable or ordinary care in student's supervision).

 Here, Plaintiff and Defendant did not have a relationship. The evidence was undisputed that Defendant and Plaintiff did not know each other; Plaintiff was not a friend of Defendant's son; Defendant had not invited Plaintiff to her home; Plaintiff was not among the twenty invited guests; and Defendant did not issue a general invitation or know of such an invitation prior to the party. We decline to extend the duty to supervise where there is no relationship.

 Additionally, there is no evidence to support a finding that a reasonable person could have foreseen that injuries of the type suffered would be likely to occur under the circumstances. *Smith*, 632 S.W.2d at 521. Defendant could not have foreseen that Plaintiff, a person unknown to her or her son John, who had not been invited to the party, would be injured in a scuffle with an unidentified individual, occurring an hour or more after the party had terminated, over a charge for beer which she did not provide, know about or authorize to be served at the party.

 The only possible duty that Defendant could owe Plaintiff would be the duty a possessor of real property owes to a person entering onto the land. That duty depends on the classification of the entrant. *Nickerson v. Moberly Foods, Inc.*, 781 S.W.2d 87, 89–90 (Mo.App.1989). Entrants onto the land are generally classified as trespassers, licensees or invitees. *Id.* The possessor owes a different duty depending upon the entrant's classification. In the absence of any pleading and proof of some sort of agency relationship, which did not occur here, Plaintiff was arguably a trespasser and, at best, a licensee. In her brief, Defendant cites numerous reasons why the evidence would not make a submissible case even if Plaintiff were assumed to be a licensee. *See, e.g., Romine v. Koehn*, 730 S.W.2d 558, 560 (Mo.App.1987). However, Plaintiff did not attempt to justify submission on this basis either at trial or in his brief and we therefore deem it unnecessary to extend this opinion with an analysis of this theory.

For the foregoing reasons, the trial court's judgment on Count I of the petition is reversed and the cause is remanded with directions to enter judgment on Count I in favor of Defendant and for further proceedings consistent with this opinion.

CARL R. GAERTNER and CRANE, JJ., concur.