**Bonnie M. SCHUMACHER, Plaintiff/Appellant,**

v.

**Michael and Connie BARKER, Dennis Gordon d/b/a Gordon Construction, Defendants/Respondents.**

**No. 71235.**

Missouri Court of Appeals, Eastern District, Division Five.

May 20, 1997.

Rehearing Denied July 14, 1997.

Martin M. Bauman, Randall A. Bauman, St. Louis, for Plaintiff/Appellant.

James C. Leritz, St. Louis, for Defendants/Respondents.

CRANDALL, Judge.

Plaintiff, Bonnie Schumacher, appeals from the judgment of the trial court sustaining defendants' motion for directed verdict on her action for personal injuries. We affirm as to defendants, Michael Barker and Connie Barker ("Barkers"), and reverse as to defendant, Dennis Gordon doing business as Gordon Construction ("Gordon").

In reviewing a directed verdict granted for a defendant, an appellate court views the evidence and permissible inferences most favorably to the plaintiff, disregards contrary evidence and inferences and determines whether the plaintiff made a submissible case. *Head v. National Super Markets*, 902 S.W.2d 305, 306 (Mo.App.1995). Directing a verdict is a drastic measure. *Id.* A presumption, therefore, is made in favor of reversing the trial court's judgment sustaining a motion for directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result. *Id.* The plaintiff may prove essential facts by circumstantial evidence as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred. *Id.*

Viewed in this light, the evidence established that in January 1994, the Barkers purchased a three acre tract of land. The Barkers and Gordon contracted for Gordon to build a house on the land. They executed a "Residential Sales Contract" on May 20, 1994. The Barkers are listed as the buyers and Gordon as the seller. Plaintiff is a li-

censed real estate agent and works for Gundaker Realtors. Plaintiff signed the May 20, 1994 contract on the line for "Selling Agent." "Gundaker" is shown as the selling and listing broker on the contract. On July 22, 1994, the parties entered into another contract denominated as an agreement for construction of a residence. This contract provides that the residence would be completed in substantial accordance with the May 20, 1994 contract.

At some point, disputes arose between the Barkers and Gordon, and plaintiff described the relationship between them as "very strained." Plaintiff began working "as sort of a go between between [Gordon] and the Barkers." The Barkers would call plaintiff telling her what needed to be done on the house, asking when certain tasks would be completed and asking her to obtain other information regarding the house. Plaintiff would then contact Gordon regarding the Barkers' requests.

By Saturday August 13, 1994, the exterior and partition walls were erected, and the decking was on the floor joists. The roof trusses were not on the house. On this day, Michael Barker told plaintiff, the builder had left, it was going to rain and he was not going to accept any bad lumber. He also asked plaintiff who was going to cover up the lumber. After she was unable to contact Gordon, plaintiff went to the construction site with her mother. Plaintiff and her mother covered up one pile of lumber with a tarp that had blown off the pile. Plaintiff then walked into the house to see if more lumber needed to be covered. Plaintiff was walking on the subfloor when she "sort of tripped" and realized there were some boards on the floor. Plaintiff reached down to move the boards away from a walkway. The boards collapsed and plaintiff fell into the basement, suffering injury. The hole in the subfloor plaintiff fell through had been cut for the stairway to the basement.

Plaintiff brought an action against the Barkers and Gordon. The Barkers filed a motion for directed verdict. Gordon, who appeared pro se, joined in the motion. The trial court sustained the motion as to both

the Barkers and Gordon. This appeal followed.

We first address plaintiff's action as it relates to the Barkers. As will be discussed, plaintiff's status is one of an invitee. The dispositive issue is whether the Barkers owed plaintiff a duty.

■ Under the common law, the general rule is that a landowner has no vicarious liability for the torts of an independent contractor. *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 386 (Mo. banc 1991). This general rule recognizes that the landowner has no right of control over the manner in which the work is to be done. *Id.* (citation omitted). The work is therefore regarded as the independent contractor's own enterprise, and the contractor rather than the landowner is the proper party to be charged with the responsibility for preventing, administering and distributing the risk. *Id.*

■ For landowners, the general rule is that they owe an invitee an obligation to use reasonable and ordinary care to prevent injury to the invitee. *Lawrence v. Bainbridge Apartments*, 919 S.W.2d 566, 569–70 (Mo. App.1996); *Noble v. Bartin*, 908 S.W.2d 390, 391 (Mo.App.1995). An exception to this rule is created when the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction. *Id.* During this period, the independent contractor, not the landowner, is seen as possessor of the land. *Id.* The duty to use reasonable and ordinary care to prevent injury, therefore, shifts from the landowner to the independent contractor. *Id.*

■ The duty does not shift to the independent contractor if the landowner controls either the physical activities of the employees of the independent contractor or the details of the manner in which the work is done. *Id.* The landowner's involvement in overseeing construction must be substantial to justify imposition of liability, and control must go beyond securing compliance with contracts. *Id.* The plaintiff bears the burden of establishing control of the landowner. *Id.*

Plaintiff argues that the question regarding who had possession and control of the

premises was for the jury because: (1) the contract between the Barkers and Gordon did not provide that Gordon had exclusive right to possession and control during the construction; (2) the Barkers regularly visited the job site; (3) the Barkers performed work on the job site, such as cleaning up; and (4) the Barkers had other contractors under their "direction and control" working on the job site when Gordon was present.

■ The July 22, 1994 contract provides that Gordon agreed to complete construction by September 30, 1994, which was after the day plaintiff fell. This contract contains no language regarding possession and control of the premises.[1] Assuming, the contract is relevant to possession and control of the premises, the contract's language or lack thereof does not establish control by the Barkers.

■ There is evidence the Barkers were frequently on the job site. But a landowner's presence on the job site, by itself, does not establish the requisite control of the physical activities of the independent contractor's employees or details of the manner in which the job is done. *See Halmick v. SBC Corporate Services,* 832 S.W.2d 925, 928–29 (Mo.App.1992).

Gordon testified that the Barkers cleaned up the construction site after Gordon and his workers would quit for the day. The cleanup consisted of sweeping up sawdust and scraps of wood. This evidence fails to establish control by the Barkers.

Gordon testified that the Barkers scheduled an electrician but he did not come to the job site until after plaintiff's accident. Michael Barker testified he hired different contractors to build a shed and drill a well on the property. He also testified that his electrical contractor would have go to the basement of the home to hook up service for the shed. There is also testimony that the Barkers hired Michael Barker's brother to install a parquet floor in the house. However, this evidence of the Barkers' "direction and con-

trol" of other contractors is not sufficient to establish the requisite control of Gordon's employees or details of the manner in which the work was done.

Plaintiff failed to establish control by the Barkers such that the duty of reasonable and ordinary care should not shift to Gordon. The trial court, therefore, did not err in sustaining the motion for directed verdict as to the Barkers.

■ We next address plaintiff's action against Gordon.[2] The duty owed by Gordon is determined by plaintiff's status. *Roberts v. Menorah Medical Center,* 777 S.W.2d 330, 332 (Mo.App.1989). An invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." Restatement (Second) of Torts, § 332 (1965). The invitation "may be implied from dedication, customary use, or enticement, allurement, inducement to enter or manifested by the arrangement of the premises or the conduct of the owner." *Singleton v. Charlebois Construction Co.,* 690 S.W.2d 845, 848 (Mo.App.1985).

■ Plaintiff is listed as the selling agent under the "Residential Sales Contract." She testified that because of the strained relationship between the Barkers and Gordon she agreed to be a "go between." Gordon testified he requested that the Barkers not come on the job site and to communicate any requests with plaintiff. Plaintiff's purpose for being on the site was connected with business dealings with Gordon. Plaintiff testified she was on the construction site "probably three times a week" during construction. She also testified that she had picked up materials and a building permit for Gordon. Although plaintiff was on the site because of Michael Barker's call, her invitation can be implied from customary use and Gordon's previous conduct. Plaintiff's status is that of an invitee.

■ When a plaintiff is an invitee, the possessor of land is subject to liability for

---

**1.** The May 20, 1994 "Residential Sales Contract" provides that possession of the property would be delivered to the buyer, the Barkers, no later than August 26, 1994.

**2.** Gordon did not file a brief with this court.

injuries caused by a condition on the land only if the possessor (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; (b) should expect that the invitees will not discover or realize the danger or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect the invitees against the danger. *Harris v. Niehaus,* 857 S.W.2d 222, 225–26 (Mo. banc 1993) (citing Restatement (Second) of Torts, § 343 (1965)).

Gordon testified that as a precaution to prevent anyone from falling through a hole made in a subfloor for a stairway he puts sheeting over the hole and nails it down. He also testified that it was the customary practice of his crew to seal up the stairway that had been cut such as in this case. He further testified "it's to be nailed, I check that, yes." [3] Plaintiff testified that she could not see the hole through the pile of wood. She also stated that the wood covering the hole was not nailed down and the boards covering the hole collapsed.

Under our standard of review, the testimony is sufficient to create questions for the jury. Based on plaintiff's testimony the wood covering the hole was not nailed down. Gordon or his employees knew a dangerous condition, an improperly covered hole in the subfloor, was present. Because as a precaution Gordon nails sheeting over the hole, it is reasonable to infer Gordon realized there was an unreasonable risk and that he should expect that invitees would not discover the danger. Gordon's testimony establishes the standard of reasonable care and plaintiff's testimony establishes a failure to exercise this care. Plaintiff made a submissible case.

Where a danger is open and obvious as a matter of law and the risk of harm exists only if the plaintiff fails to exercise due care, the case is not submissible to the jury. *Harris,* 857 S.W.2d at 227; *Smoot v. Vanderford,* 895 S.W.2d 233, 241 (Mo.App.1995). Here, plaintiff testified she could not see the hole in

the subfloor through the pile of wood. The danger was not open and obvious as a matter of law. The trial court erred in sustaining the motion for directed verdict as to Gordon.

The judgment of the trial court is affirmed as to the Barkers, reversed as to Gordon and remanded.

AHRENS, C.J. and CHARLES B. BLACKMAR, Senior Judge, concur.

---

**3.** Gordon stated he was unsure what time his employees left the job site on the day prior to the accident.