Shannon HILL, a minor by and through his Natural Mother and Next Friend Voy HILL, and Voy Hill, Plaintiffs/Respondents,

v.

HERBERT HOOVER BOYS CLUB, Defendant/Appellant.

No. ED73083.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 26, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 6, 1999.

Application to Transfer Denied June 1, 1999.

James E. Godfrey, Jr., Samuel C. Ebling, St. Louis, for appellant.

Daniel J. McMichael, McMichael & Logan, Chesterfield, for respondent.

MARY K. HOFF, Presiding Judge.

Herbert Hoover Boys Club (Herbert Hoover) appeals from the judgment entered upon a $350,000 jury verdict in favor of Shannon Hill (Shannon)[1] on his negligence claim arising out of injuries he sustained during a baseball game between boys' teams for Herbert Hoover and Mathews–Dickey Boys Club (Mathews–Dickey). We find Herbert Hoover owed no duty to Shannon. We reverse and remand with directions.

Herbert Hoover contends the trial court erred in: (1) refusing to direct a verdict in its favor because Shannon failed to present evidence sufficient to establish a submissible case in that there was no evidence of a relationship between Shannon and Herbert Hoover out of which a duty arose, and Shannon assumed the risk of injury during a sporting event; (2) submitting the verdict director, Instructions No. 6 and No. 7, in that those instructions failed to hypothesize the ultimate facts of Herbert Hoover's negligence, were ambiguous and argumentative, and misstated the law; and (3) refusing to submit Herbert Hoover's tendered Instruction No. A regarding assumption of the risk in that it was supported by the evidence and correctly stated the law. Because we find the first point dispositive of this appeal, we will not address points two and three.

To ascertain whether or not a plaintiff has made a submissible case upon review of a motion for directed verdict, we consider the evidence in the light most favorable to plaintiff, give all reasonable beneficial inferences to plaintiff, and disregard all evidence and inferences to the contrary. *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 202 (Mo.App. E.D.1998). "The evidence and inferences must establish every element and not leave any issue to speculation." *Eidson v. Reproductive Health Servs.*, 863 S.W.2d 621, 626 (Mo. App. E.D.1993). If reasonable minds cannot differ as to the proper verdict, then the court should order a directed verdict. *Smith*, 967 S.W.2d at 202.

Viewed with this standard in mind, the record shows: The relevant incident occurred in May 1993 during a Khoury League baseball game between boys' teams from Mathews–Dickey and Herbert Hoover at a ball field in Bates–Rumbold Park in the City of St. Louis (City). This ball field is owned by City. The distance from home plate to left field on this ball field was estimated to be anywhere from 100 feet to 200 feet. Left field was bound-

---

1. Both Shannon, through his mother Voy Hill (Voy) as his next friend, and Voy individually, (collectively Plaintiffs) pursued claims in this lawsuit. We are using their first names to distinguish between them. By using their first names we do not mean to be disrespectful.

ed by a slope, then an eight inch curb, then a street, and then a curb on the other side of the street. No barrier existed between left field and the slope, curbs or street.

Herbert Hoover was the home team for the game and had a permit from City to use the ball field for games involving youths sixteen years of age and under. The game was originally scheduled for a different ball field and, at the request or suggestion of coaches from Herbert Hoover and Mathews–Dickey, was moved to this one just prior to the start of the game.

It is undisputed that the team members were in the thirteen to fifteen year old age range and often hit fly balls a distance of 225 and more feet while playing baseball.

Coaches for the Mathews–Dickey boys' team, Exie French, Alfonso Fowler, and Mr. Carter, were present prior to and at the time of the injury. Exie French, the manager, and Alfonso Fowler acknowledged they were responsible for Shannon.

At the time of the incident, fourteen year old Shannon was playing for the Mathews–Dickey team in left field, in rubber- or plastic-cleated shoes. A player on the Herbert Hoover team hit a fly ball over Shannon's head. In trying to catch the ball, Shannon ran down the slope, past the curb at the street, across the street, and fell into the curb on the other side of the street. Shannon testified that Mathews–Dickey was in first place in the league and Herbert Hoover was a good team "so we were trying to be better than they were"; that the coaches told the team "to go play ball, give it 110 percent if you can"; and, before going out to left field, the coach would tell them to "do [their] best."

Voy, who was watching the game, took Shannon to the hospital immediately after the fall. Shannon had to have one kidney surgically removed, stayed in the hospital seven days, and has had a relatively successful recovery since the operation.

Shannon and Voy filed a damages action for Shannon's personal injuries and the medical costs incurred as a result of those injuries. Plaintiffs' claims were pursued against City (Counts I and III of the third amended petition);[2] Mathews–Dickey (Counts II and IV of the third amended petition); Exie French, manager of the Mathews–Dickey baseball team (Counts V and VI of the third amended petition); Al Fowler, head coach of the Mathews–Dickey baseball team (Counts VII and VIII of the third amended petition); Lonnie Cain, coach of the Herbert Hoover baseball team (Counts IX and X of the third amended petition); and Herbert Hoover (Counts XI and XII of the third amended petition). In his claims, Shannon alleged, in relevant part, that as a result of his fall, he sustained personal injuries for which he has incurred and will incur medical expenses, pain, suffering, and "disability and disfigurement." In her claims, Voy alleged only that, as a result of Shannon's injuries, she "has incurred medical expenses in an amount of $15,000.00 and will in the future incur additional medical expenses not presently ascertainable."

Prior to trial, Plaintiffs' claims against Mathews–Dickey, Exie French, and Al Fowler were settled. A jury assessed Shannon's damages at $350,000 and found City twenty percent at fault based on a premises liability claim, Herbert Hoover eighty percent at fault, and Shannon not at fault. A default judgment against Lonnie Cain for $350,000 was entered. After trial, City settled for a total of $50,000, plus twenty percent of the taxable costs. The appeal now before us is pursued by Herbert Hoover only.

In relevant part, Shannon alleged that Herbert Hoover, through its agent, "endangered the well-being of the members of" the baseball team. Herbert Hoover filed Motion(s) for Directed Verdict at the close of Plaintiffs' evidence and at the close of all the evidence, in which Herbert Hoover argued, in part, that Shannon "points

---

2. The claims against City were based on premises liability.

to no *duty* [owed] to him by Herbert Hoover" (emphasis in original). The trial court denied these motions. Shannon's claim against Herbert Hoover was submitted to the jury on the grounds Herbert Hoover's personnel acted "within the scope and course of" their agency or employment and acted negligently in permitting "the baseball game to go forward on the ball field ... that had a 3 foot slope ending at the street in an area of left field." In accordance with the jury's verdict, the trial court entered judgment in favor of Shannon and against Herbert Hoover and City in the total amount of $350,000.[3] In its post-trial Motion for Judgment Notwithstanding the Verdict and in the alternative, Motion for New Trial, Herbert Hoover argued in part that Shannon

> was brought to the game by *his* club, the Mathews–Dickey Boys Club. He participated in the game and played left field at the direction of *his* club and coach. He was directed to play hard and aggressively by *his* coach. The field was not owned by Herbert Hoover ..., but rather by the City of St. Louis....
>
> [Shannon] points to no duty owed to him by Herbert Hoover....

(emphasis in original). This appeal followed.

■ The case against Herbert Hoover was submitted on the theory of negligent supervision of a minor.[4] Missouri has judicially recognized such a cause of action in various settings. *A.R.H. v. W.H.S.*, 876 S.W.2d 687, 689 (Mo.App. E.D.1994). Here "we must determine whether [Shannon] presented evidence from which the jury could have found that [Herbert Hoover], through its agent[s] ..., was [liable for] negligence in failing to properly super-

vise [Shannon]." *Smith, a minor, by and through her next friend, Smith v. Archbishop of St. Louis ex rel. Archdiocese of St. Louis,* 632 S.W.2d 516, 521 (Mo.App. E.D.1982). "Negligent supervision, like any other tort, involves a breach of a duty defendant owes plaintiff which causes plaintiff to suffer damages." *Id.*

■ The duty to supervise is a narrow one, requiring "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *A.R.H.,* 876 S.W.2d at 689, 691. Missouri case law establishes that "acceptance of the custody and control of a minor child creates a relationship sufficient to support a duty of care." *Id.* at 691. It is not "the supervisor's control over the instrumentality that caused the harm," but "the obligation and ability to supervise and control *the child* " that is the "decisive factor" in a negligent supervision of a minor case. *Id.* at 689 (emphasis in original). For "the duty to supervise runs not to an activity, but rather to an individual." *Bequette v. Buff,* 862 S.W.2d 921, 924 (Mo.App. E.D.1993).

■ Therefore, to establish Herbert Hoover's liability for negligent supervision of Shannon, it is not enough to show Herbert Hoover's control over the game and ball field causing the harm. Instead, Shannon must establish Herbert Hoover's "obligation and ability to supervise and control" Shannon through Herbert Hoover's acceptance of the custody and control of Shannon. This Shannon has not established.

■ The evidence shows that personnel and agents for Mathews–Dickey were present prior to the start of and during the

---

**3.** As noted earlier, City has settled and is not a party to this appeal.

**4.** Herbert Hoover pursues point one, in part, on the ground Shannon submitted the case against Herbert Hoover on the basis of premises liability and failed to establish that Herbert Hoover owned or maintained the field. Shannon counters that he submitted the case

against Herbert Hoover on the theory of negligent supervision of a minor. Based on the allegations of the third amended petition and the statements in the verdict directors submitted to the jury, we agree with Shannon that his claim against Herbert Hoover was based on a theory of negligent supervision of a minor.

playing of the game, as well as at the time of the incident. There is no evidence that Mathews–Dickey personnel and agents at any time asked Herbert Hoover personnel and agents to coach or otherwise supervise the players on Mathews–Dickey's team. Nor is there any evidence that at any time Herbert Hoover's personnel and agents took over or accepted the supervisory or coaching obligations for the Mathews–Dickey team. There is no evidence that Herbert Hoover's personnel or agents could or did tell Shannon how vigorously to play in (and beyond) left field, what shoes to wear, or anything else regarding the playing of the baseball game leading to the incident. There is no evidence Herbert Hoover was entrusted with the custody and control of Shannon during this baseball game. There is simply no evidence that Herbert Hoover had the obligation or ability to supervise or control Shannon's conduct during the game. Based on the available evidence, Herbert Hoover did not have a relationship with Shannon sufficient to establish Herbert Hoover's duty to supervise Shannon. Therefore, the trial court erred in not entering judgment in favor of Herbert Hoover as requested in its Motion for Directed Verdict at the close of all the evidence and Motion for Judgment Notwithstanding the Verdict and in the alternative, Motion for New Trial.

Judgment in favor of Shannon and against Herbert Hoover is reversed and the cause is remanded with directions to enter judgment in favor of Herbert Hoover on Plaintiffs' claims.

GARY M. GAERTNER, Judge and RHODES RUSSELL, Judge, Concur.