**Amanda COOK, Appellant,**

v.

**David SMITH, Respondent.**

**No. WD 58116.**

Missouri Court of Appeals,
Western District.

Oct. 3, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 2000.

Application for Transfer Denied
Jan. 23, 2001.

Roger G. Brown, Jefferson City, for appellant.

Erwin L. Milne, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., LAURA DENVIR STITH and NEWTON, JJ.

LOWENSTEIN, Judge.

This appeal arises from a directed verdict granted Defendants David and Ginger Smith (Smiths) in a personal injury case involving one count of premises liability based on an artificial condition of land and one count of negligent supervision. Plaintiff Amanda Cook (Cook) is a sixteen-year-old girl who was invited to the Smiths' farm for a party with their daughter, Sarah Smith, and several other members of her high school volleyball team. When a guest began to drive the Smiths' All-Terrain Vehicle (ATV) without permission, Cook climbed aboard. An accident resulted, allegedly because of faulty brakes on the ATV, and Cook was seriously injured. Neither of the Smiths was home at the time of the accident.

## FACTUAL AND PROCEDURAL HISTORY

On August 27, 1994, the Smiths hosted a party and bonfire at their farm in Callaway County for twenty-five to thirty-five members of Sarah's high school volleyball team. Among those invited was Cook. No adults were present at the time the party began, around 5 p.m. Ginger Smith arrived about three hours later; David Smith was out of town. At the time of the accident only the Smiths' children were home: Sarah, age sixteen, and Justin, age fourteen.

The Smiths kept a three-wheel ATV on their property, which Justin used that evening to haul supplies to a pasture for the bonfire. Justin testified that the rear brake on the ATV was "faulty." He said that though the ATV would stop after about five feet when the front brake was applied, the rear brake would not stop the vehicle until about twenty feet.

When Justin left the ATV running that evening to tend to the bonfire, a guest, Laura Farris (Farris), began driving the ATV. Farris had never before driven an ATV and did not know that the brakes were faulty. She drove the ATV around the pasture and returned to the site of bonfire. Plaintiff Cook then climbed aboard as a passenger, and the two of them drove away from the bonfire and toward the Smiths' house. There was disputed testimony as to whether Farris had Sarah's permission to drive the ATV. Ginger Smith testified that had she been there, she would not have permitted any of the girls to ride the ATV. Justin testified that he waved his hands and yelled to Farris and Cook to return the ATV, but to no avail.

On a path to the house, Farris and Cook encountered Sarah, who was driving a tractor-type vehicle. To avoid hitting Sarah, Farris turned the vehicle but headed toward a creek. As the two approached the creek, Farris turned the steering wheel all the way to the left and applied the brakes, but the ATV continued to go straight, went over the embankment and dropped six or seven feet into the dry creek bed. Cook sustained numerous injuries, including seven broken ribs, a collapsed lung, torn cartilage in her chest, severe bruises, a concussion, a gash on the head, and a permanently enlarged right breast. She continues to suffer from pain in her ribs and from back spasms.

Cook sued on two theories: premises liability and negligent supervision. With regard to the premises liability claim, Cook argued that the ATV was a defective artificial condition of land and thus the Smiths breached their duty to either warn her or make the ATV safe. As to the negligent supervision claim, Cook argues that the Smiths breached their duty of ordinary care by failing to provide adult supervision to the teenage group.

At the close of Plaintiff Cook's evidence, the trial court granted the Smiths' motion for a directed verdict only as to the premises liability claim on the basis that the ATV was not a condition of the land. At the close of all of the evidence, the trial court granted a directed verdict to the Smiths on the negligent supervision claim on the basis that Cook failed to make a submissible claim. On appeal Cook contests both rulings.

## STANDARD OF REVIEW

In reviewing a directed verdict granted for a defendant, an appellate court views the evidence and permissible inferences most favorably to the plaintiff, disregards contrary evidence and inferences, and determines whether the plaintiff made a submissible case. *Thong v. My River Harbour, Inc.* 3 S.W.3d 373, 377 (Mo.App. 1999) (quoting *Schumacher v. Barker,* 948 S.W.2d 166, 168 (Mo.App.1997)). Directing a verdict is a drastic measure. *Id.* A presumption therefore is made in favor of reversing the trial court's judgment sustaining a motion for directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no

room for reasonable minds to differ as to a result. *Id.*

## I. Premises Liability

Plaintiff Cook argues in her first point that the trial court erred in granting the directed verdict as to premises liability. In this point, two questions arise: the legal status of Cook, and the duty owed to her with respect to the land.

In Missouri, the duty owed to a plaintiff in a premises liability action generally depends upon the status of the plaintiff at the time of the injury. *Cochran v. Burger King Corp.*, 937 S.W.2d 358, 361 (Mo.App.1996)(citing *Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. banc 1995)). Moreover, "the particular standard of care that society recognizes as applicable under a given set of facts is a question of law." *Id.* There are three broad categories of plaintiffs recognized in premises liability cases: (1) trespassers; (2) licensees; and (3) invitees. *Id.*

The parties argue a great deal in their briefs about the legal status of Plaintiff Cook. Cook contends that she was an invitee; the Smiths contend that she was a licensee. In *Carter v. Kinney,* the Supreme Court of Missouri clarified Missouri's distinction between the two and stated that "social guests are but a subclass of licensees." 896 S.W.2d at 928. The *Carter* case involved a church member who opened up her house to other members of her church for bible study. *Id.* at 927. The Court noted that "the fact that an invitation underlies a visit does not render the visitor an invitee for purposes of premises liability law." *Id.* at 928 The Court also cited an earlier decision noting that the status of invitee arises in two situations: where the invitation was rendered with a "material benefit motive," or where the invitation was extended to the "public generally or to some undefined portion of the public" *Id.* (quoting *Wolfson v. Chelist*, 284 S.W.2d 447, 450 (Mo.1955)).

The facts indicate that Plaintiff Cook, along with several others, was invited to the Smiths' home to unite their daughter's volleyball team. The court finds no "material benefit motive" in such a purpose. *Id.* Moreover, the guests at the party were an ascertainable group: twenty-five to thirty-five members of a high school athletic team. As such, this court finds that the invitation was neither to "the public generally [nor] to some undefined portion of the public" so as to render the guests invitees. *Id.*

The next question for the court is what duty the Smiths owed Cook as a licensee. Missouri follows the Restatement, Law of Torts, First § 342 (1934). *Gray v. Russell,* 853 S.W.2d 928, 930 (Mo. banc 1993); *Wells v. Goforth,* 443 S.W.2d 155, 158 (Mo. banc 1969). That section states:

A possessor of land is subject to liability for bodily injury caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein.

The pivotal issue in this point is whether an ATV is an artificial condition of land. Cook argues that the only requirement for a condition to be artificial is that it be on ("thereon") the land. She relies heavily on *Wiegers by Evans v. Fitzpatrick,* 766 S.W.2d 126, 129 (Mo.App. 1989), which held that a metal ladder brought onto land was an artificial condition of land for purposes of the attractive nuisance doctrine. Because the attractive nuisance doctrine was not pleaded and because there is little similarity between a

ladder and a motorized vehicle, this court finds *Wiegers* inapplicable.

■ Conditions of land generally are in the nature of "hidden dangers, traps, snares, pitfalls, and the like." *Jones v. National Supermarkets, Inc.* 729 S.W.2d 218, 220 (Mo.App.1987) (quoting *Dixon v. General Grocery Co.*, 293 S.W.2d 415, 418 (Mo.1956)). A review of premises liability cases in Missouri indicates nothing akin to a motorized vehicle as an artificial condition.[1] As such, the court declines to extend the meaning of artificial condition of land to include an ATV, even a defective one. This point is denied.

## II. Negligent Supervision

Plaintiff Cook argues in her second point that the trial court erred in granting a directed verdict in favor of the Smiths on their count for negligent supervision.

■ Negligent supervision is a variant of the common law tort of negligence. *G.E.T. ex rel. T.T. v. Barron*, 4 S.W.3d 622, 624 (Mo.App.1999). To make a prima facie case, a plaintiff must plead and prove: (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property. *Id.* (quoting *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985)).

■ Missouri courts have held that the duty to supervise is narrow, requiring "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Hill ex rel. Hill v. Herbert Hoover Boys Club*, 990 S.W.2d 19, 22 (Mo.App. 1999)(coach had no duty to supervise minors playing on opposite team). Missouri case law establishes that "acceptance of the custody and control of a minor child creates a relationship sufficient to support a duty of care." *Id.; Swain by Swain v. Simon*, 699 S.W.2d 769 (Mo.App.1985)(babysitter was supervisor and owed duty of ordinary care). "It is not the supervisor's control over the instrumentality that caused the harm, but the obligation and ability to supervise and control *the child* that is the decisive factor in a negligent supervision of a minor case." *Id.* (citations omitted)(emphasis in original). "The duty to supervise runs not to an activity, but rather to an individual." *Id.* (quoting *Bequette v. Buff*, 862 S.W.2d 921, 924 (Mo. App.1993) (parents owed no duty to uninvited guest at child's party)).

The parties primarily rely on the *Bequette* and *Hill* cases in arguing whether a duty arose. In *Bequette*, a mother authorized her son to invite twenty friends to celebrate his sixteenth birthday, and he gave her a guest list. 862 S.W.2d at 922. Because the mother was required to work late, she arranged for her twenty-six-year-old son and his wife to supervise the party. *Id.* Fliers advertising a "keg party" were distributed at the son's high school, even though the mother neither authorized the fliers nor the alcohol. *Id.* at 922–23. The plaintiff, who learned about the party from a flier and was not among the twenty invited guests, broke his ankle in a scuffle at the party. *Id.* at 923–24. The *Bequette* court held that the mother owed no duty to supervise because the plaintiff and the mother did not know each other, because the plaintiff was not a friend of the defendant's son, because the defendant had not invited the plaintiff, because the plaintiff was not among the twenty invited guests, and because the defendant did not know of or issue a general invitation to the party. *Id.* at 925.

---

1. *See, e.g., Carter v. Kinney*, 896 S.W.2d 926 (Mo. banc 1995) (an icy driveway); *Jackson v. City of Blue Springs*, 904 S.W.2d 322 (Mo. App.1995)(trees and bushes that blocked a roadway); *Becker v. Setien*, 904 S.W.2d 338 (Mo.App.1995) (a hole in the floor); *Gray v. Russell*, 853 S.W.2d 928 (Mo. banc 1993)(stairs of a loading dock).

In *Hill*, the plaintiff was a fourteen-year-old baseball player in a league of youths age sixteen years old or under. 990 S.W.2d at 21. Hill was injured during a game and sued (among others) the coaches on the opposing team under a negligent supervision theory. *Id.* at 22. The court held that the coaches on the opposing team never exercised custody and control of the minor primarily because they neither assumed nor accepted coaching obligations; indeed, the coaches on his own team acknowledged responsibility for the boy. *Id.* at 21, 23.[2]

■ This court finds that the Smiths accepted the custody and control of Cook as a minor child, establishing and creating a duty to her of ordinary care. Cook was not an uninvited partygoer, as in *Bequette*. 862 S.W.2d at 924. Cook was an invited, anticipated guest. Moreover, the Smiths were more akin to the coaches on Hill's team than to those on the opposing team. *Hill*, 990 S.W.2d at 21. The Smiths knew a group of teenagers would be on their farm with a bonfire and a defective ATV, yet they provided no supervision. Based on the specificity of the invitation, the age of the guests, the number of guests, the na-ture of the party, and the Smiths' knowledge of the defective brakes, this court finds that the Smiths accepted Cook, a minor, into their care and control so as to establish the duty of ordinary care on their part under a negligent supervision claim.

■ Breach of the duty of ordinary care "involves whether a reasonable person could have foreseen that the injuries of the type suffered would likely occur under the circumstances." *Rogger v. Voyles*, 797 S.W.2d 844, 846 (Mo.App.1990). "Ordinary care may require more vigilance and caution when a child is involved if there is a potentially dangerous situation of which a supervisor is or should be aware." *Id.* Plaintiff Rogger, a thirteen-year-old girl, sued her grandparent for injuries sustained after the grandparent permitted her to drive an automobile unsupervised. *Id.* Rogger had never driven and was not aware that the automobile's brakes were faulty. *Id.* The *Rogger* court held that these facts were sufficient evidence for a trier of fact to make a negligent supervision finding: "It is foreseeable that a minor who has never operated a full-size automobile, but does so without direction

---

**2.** The Smiths also rely on *Smith v. Gregg*, 946 S.W.2d 807 (Mo.App.1997). The *Smith* court found no actionable negligent supervision claim where Defendants hosted a high-school graduation party for minors and provided alcohol. *Id.* at 809. At the party, the plaintiff incurred injuries from a fight with another partygoer while the parents were in a closed room. *Id.* The two counts involved 1) negligent supervision in providing alcohol to minors, and 2) negligent supervision in failing to provide security because of the violent guest. *Id.* at 811. The court declined to find an actionable negligent supervision claim as to the count involving alcohol to avoid imposing dram-shop liability on the hosts. *Id.* (relying on *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547 (Mo. banc 1987) Note: The Supreme Court recently examined § 537.053.3 and invalidated the part thereof that required as a prerequisite a criminal conviction. *Kilmer v. Mun*, 17 S.W.3d 545 (Mo. banc, 2000)). The negligent supervision claim involving the failure to provide security was rooted in premises liability: the court noted that the hosts neither knew nor should have known of any necessity to control the violent guest. *Id.* at 813. These facts are not applicable to the instant case, where alcohol was not involved and where the allegation does not relate to failure to control a third party. That the activities took place on the Smiths' property does not in itself restrict the court to considering premises liability theories in finding a duty to supervise. The allegation in the instant case instead involves providing no supervision to a group of teenagers where it was foreseeable they would play with and be injured by a defective ATV.

Neither party cited a similar case, *Thwing v. Reeder*, 987 S.W.2d 347 (Mo.App.1998), where summary judgment was correctly granted in favor of a mother who hosted a drinking party for her teenage son and his friends. In *Thwing*, the mother temporarily left the party to visit a neighbor. *Id.* at 348. Shortly after she left, a group of party crashers intruded and a guest was shot. *Id.* The case was not submitted under a negligent supervision theory, and like *Smith v. Gregg*, involved uninvited partygoers and alcohol. *Id.*

or supervision, might lose control of it and suffer serious injuries" *Id.* at 847.

The *Rogger* facts are similar to the instant case. Had the Smiths been present at the party, supervised Farris as she drove the vehicle or prevented her or any of the guests from doing so, it is conceivable that Cook would not have sustained the injuries she did. Having established sufficient evidence to support a duty to supervise Cook and a responsibility of ordinary care, the issues of causation and breach of duty by the Smiths made a submissible jury issue. Under the applicable scope of review where a directed verdict has been granted, there was sufficient evidence for a jury to have decided whether there was a breach of duty. The court reverses and remands on the issue of negligent supervision.

The judgment as to premises liability is affirmed. The judgment as to negligent supervision is reversed and remanded for a new trial.

All concur.